J2LOTTINGER, Chief Judge.
This is an appeal from an order of rehabilitation granted to James H. Brown, Commissioner of Insurance (Commissioner) against appellant, Magnolia Fire and Casualty Insurance Company (Magnolia). Magnolia’s main contention is that the Commissioner’s actions were premature.
CHRONOLOGY
In May of 1992, the Commissioner appointed a certified financial examiner, Constance Korte, to examine the records and accounts of Magnolia. Korte’s initial inquiries revealed that several assets on Magnolia’s March 31, 1992 quarterly report were non-admissible assets and that according to Magnolia’s own consulting actuary, its loss reserves and loss adjustment expenses were inadequate. Korte also concluded that Magnolia had insufficient cash to continue business.
In a meeting with the Commissioner on June 26, 1992, Magnolia representatives acknowledged their concerns over the financial condition of the company. However, they advised the Commissioner that a sale of premium finance notes was imminent, negotiations for the mortgage of the company’s headquarters were about to be concluded, a capital infusion by outside investors was in active negotiations and certain figures in Korte’s preliminary reports were in error. The parties scheduled a subsequent meeting to discuss Korte’s reports; however, Magnolia’s representatives failed to appear.
On July 8, 1992, with the continued deterioration of the financial condition of Magnolia including, its liquidation of assets, the inaecu- *430 racy of data used to calculate loss reserves, its unsuccessful attempts to sell or mortgage additional assets or obtain an additional capital infusion, the issuance of $2.5 million in suspensive appeal bonds for which Magnolia was liable on judgments rendered against its parent company, Pelican State Mutual Insurance Company (Pelican), and the termination of a risk pooling arrangement with Pelican, the Commissioner determined that further transaction of the company’s business would be hazardous to its policy holders, creditors and the public. The Commissioner filed a petition for order of conservation band in-junctive relief and for rule to show cause why an order to rehabilitate or liquidate the company should not be entered. On July 9,1992, the trial judge issued the injunction.
Coinciding with Korte’s examination, the Commissioner retained Scruggs Consulting Corporation (Scruggs) to perform an actuarial analysis and issue an actuarial opinion as to the adequacy of the loss reserves and loss adjustment expenses reported by Magnolia. On July 14, 1992, Scruggs advised the Commissioner that preliminary investigations indicated that Magnolia’s loss reserves were deficient.
On July 17, 1992, Magnolia moved for an expedited hearing on the rehabilitation rule; the hearing was set for August 10. Magnolia filed a dilatory exception raising the objection of prematurity on July 21, 1992. Meanwhile, the examinations by Korte and Scruggs were concluded on August 5 and August 7, 1992, respectively.
At the hearing, the trial court denied Magnolia’s exception and granted the Commissioner’s petition for an order of rehabilitation of Magnolia and Pelican. Magnolia appeals, raising three main issues:
1) The Commissioner’s failure to comply with La.R.S. 22:1301-1316 in conducting the financial examination of Magnolia rendered these regulatory proceedings premature.
2) Under La.R.S. 22:904(B), actuarial opinion must be “phased in,” and in the absence of rules and regulations for such phase in, the action of the commissioner was premature.
3)The actuarial opinions should have been excluded because determinations of solvency or insolvency do not include actuarial opinions of loss reserves or loss adjustment expense reserves.
ISSUE ONE
Magnolia asserts that this action is premature because the Commissioner failed to comply with the statutory provisions which allow him to examine the books and records of an insurance company.
The provisions of La.R.S. 22:1301 authorize the Commissioner to 14examine the books and records of an insurance company when, in his opinion, it is necessary. La.R.S. 22:1305 authorizes the Commissioner to employ an examiner for the purpose of such an examination. La.R.S. 22:1312 compels the Commissioner to prepare a written report of such examination, to certify the report, submit a copy to the insurer, and provide the insurer with an opportunity to be heard in response to the report.[1]
Magnolia contends that the above provisions must be read in pari materia with La.R.S. 22:733 which authorizes the Commissioner to seek an order of rehabilitation or liquidation. According to Magnolia, § 733 requires the Commissioner to make certain findings, and § 1301-1316 set forth the procedure for making those findings. Magnolia maintains that the Commissioner’s actions in this case are premature because he sought an order of rehabilitation prior to completion of the examination and without giving Magnolia an opportunity to be heard.
In presenting this argument, Magnolia cites no jurisprudential or statutory authority requiring the Commissioner to defer action on rehabilitation or liquidation until a final examination report is submitted, traversed and filed. The statutory provisions concerning examinations and hearings are contained in a different section of the Insurance Code and are not referenced in the provisions of Part XVI which govern rehabilitation and liquidation. An insolvent or hazardous insur- *431 anee company is put into rehabilitation or liquidation in accordance with the requisites of Part XVI of the Insurance Code which does not mandate financial examinations or hearings as prerequisites to such proceedings.
In the present case, preliminary investigations revealed that Magnolia was financially unstable and that its continued operations would be hazardous to its policyholders or creditors or the public. According to La.R.S. 22:733 the Commissioner had grounds to file a petition seeking rehabilitation or liquidation. Whether the financial examination was complete or whether Magnolia was entitled to |sa hearing is irrelevant as the Commissioner had sufficient grounds to institute these proceedings.
Therefore, we conclude that the trial court did not err in denying Magnolia’s exception raising the objection of prematurity.
ISSUE TWO
Magnolia next asserts that in the absence of proper rules and regulations promulgated by the Commissioner pursuant to La.R.S. 22:904(B), the Commissioner’s action was premature because it was based on actuarial opinion.[2]
La.R.S. 22:904 provides that:
A. Beginning January 1, 1992, the loss reserves under policies of personal injury liability insurance, policies of employer’s liability insurance, and policies of worker’s compensation insurance shall be accompanied by a statement of the opinion of an associate or fellow of the Casualty Actuarial Society or other qualified loss reserve specialist, setting forth his opinion relative to the reasonableness and sufficiency of loss and loss adjustment expense reserves.
B. The commissioner of insurance shall adopt reasonable rules and regulations for the implementation and administration of the provisions of this requirement, with due consideration of the establishment of a proper phase-in, thresholds for certification requirements based on premium volume or product lines or both, insurance solvency standards tests as performed by the National Association of Insurance Commissioners, and the financial condition of each insurer to which these requirements apply.
A review of the legislative history of this statute reveals that the legislature was addressing the problem of insurance companies overestimating reserves in order to prolong the companies lives before going insolvent. The statute eliminates the problem by requiring an insurer to attach to its annual statement, the opinion of an actuary attesting to the fact that the reserves reported are proper.
At trial, Magnolia’s president, Michael Bowler, stated that Magnolia 16submitted an actuarial opinion with its 1991 statement because Magnolia believed that it was required to do so under § 904. Applying Magnolia’s argument, this opinion should not be considered because the Commissioner did not promulgate rules and regulations for filing such opinions. Even if the submitted opinion is disregarded, there is nothing in the statutes prohibiting the Commissioner from considering other actuarial opinions.
In this ease, three actuarial statements as to the reasonableness of Magnolia’s loss reserves were prepared. Two of the opinions were compiled by actuaries hired by Magnolia and one was prepared by the Commissioner’s actuary, Scruggs. Magnolia submitted the most favorable of its two reports with its 1991 statement; even that report showed that the company’s reserves were inadequate. The two remaining reports also revealed that Magnolia’s reserves were deficient. If the Commissioner relied on the remaining opinions in seeking the order of rehabilitation, such reliance is not affected by his failure to promulgate rules under § 904 for the submission of actuarial opinions by insurance companies.
Because the Commissioner could properly rely on actuarial opinions not submitted in *432 accordance 'with § 904, we conclude that the trial court did not err in denying Magnolia’s exception of prematurity.
ISSUE THREE
Finally, Magnolia contends that the trial court erred in allowing evidence of actuarial opinions for purposes of determining its solvency or insolvency. Magnolia asserts that in determining solvency, the court must apply La.R.S. 22:732.2[3] which brequires that solvency be determined according to certain statutory provisions.
Assuming that Magnolia is correct and the actuarial opinions should not have been used to determine Magnolia’s solvency, this does not affect the trial court’s order of rehabilitation. The Commissioner set forth two grounds for seeking the order of rehabilitation. These grounds were that Magnolia:
(1) Has obligations or claims exceeding its assets, cannot pay its contracts in full, or is otherwise found by the commissioner of insurance to be insolvent; or
(5) Is found to be in such condition that its further transaction of business would be hazardous to its policyholders, or to its creditors, or to the public; ...
La.R.S. 22:733(1) and (5).
The trial court did not find that Magnolia was insolvent. The court found, and the non-actuarial evidence clearly supports, the conclusion that Magnolia’s continued business would be hazardous to its policyholders or its creditors or the public. Thus, even if the actuarial opinions were inadmissible, the order of rehabilitation would have been issued.
For this reason we find that this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court at appellant’s costs.
AFFIRMED.

. La.R.S. 22:1312 was repealed in 1992.

. The Commissioner asserts that Magnolia's impairment and rehabilitation order did not result from actuarial opinion and therefore, the two remaining arguments are without merit. However, we feel it appropriate to discuss these issues due to the abundance of actuarial evidence presented and because the trial judge mentioned the evidence in his oral reasons for judgment.

. (3)(a) "Insolvency” or "insolvent” shall mean:
[[Image here]]
(ii) ... the inability to pay its obligations when they are due, or a condition when its admitted assets do not exceed its liabilities plus the greater of:
(aa) Any capital and surplus required by law for its organization.
(bb) The total par or stated value of its authorized and issued capital stock.
(b) As to any insurer licensed to do business in this state as of the effective date of this Part which does not meet that standard established under Item (ii) of this Subparagraph, the term "insolvency” or "insolvent” shall mean, for a period not to exceed three years from the effective date of this Part, that it is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities plus any required capital contribution ordered by the commissioner under provisions of the insurance law.
(c) For purposes of this Paragraph, "liabilities” shall include but not be limited to reserves required by statute, by general regulations of the Department of Insurance or by specific requirements imposed by the commissioner upon a subject company at the time of admission or subsequent thereto.